UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

PAUL EDWARD WHITE,

        Petitioner,

        Case No. 1:18-cv-384

v.

        Honorable Paul L. Maloney

GREGORY SKIPPER,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.   Factual allegations

Petitioner Paul Edward White is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Michigan. On August 11, 2014, he pled guilty in Kent County Circuit Court to two counts of armed robbery, Mich. Comp. Laws § 750.529, and one count of interfering with a witness in a criminal case, Mich. Comp. Laws § 750.122(7)(b). The trial court sentenced him as a fourth habitual offender 30 to 90 years for the armed-robbery convictions and 10 to 30 years for the witness-interference conviction.

After hearing the sentence, Petitioner moved to withdraw his plea. The trial court denied his motion. Petitioner challenged the judgment of conviction and sentence on appeal. The Michigan Court of Appeals affirmed the trial court's judgment in an opinion entered on July 21, 2016. The Michigan Supreme Court denied leave to appeal on April 4, 2017, because it was not persuaded that the questions presented should be reviewed by that court.

In this action, Petitioner raises the following grounds for relief:

1. When Mr. White relied on the statements of his attorney that his fiancé[e] would go to prison and [be] taken away from her child if he did not plead guilty; and when he relied on these statements when entering his guilty plea; his guilty plea was coerced and involuntary resulting in Sixth and Fourteenth Amendment violations.

2. Mr. White's attorney was ineffective where he told Mr. White that his fiancé[e] would be sent to prison if he did not take the plea and chose to go to trial, and where he relied on these statements when he pleaded guilty; he now has the right to withdraw his guilty plea.

3. Mr. White's trial counsel was ineffective for failing to move to suppress evidence illegally obtained as a result of an illegal search and seizure of prisoner mail, allegedly a letter sent by Mr. White.

4. Mr. White was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to subject prosecution to meaningful adversarial testing by challenging prosecution for charging Mr. White as a

habitual-offender fourth offense ex post facto and allowing him to enter into an illusory plea that was inapplicable.

(Br. in Supp. of Pet., ECF No. 2, PageID.7-8.)

The petition is timely and, according to Petitioner, the claims were exhausted because he raised them on appeal to the Michigan Court of Appeals and the Michigan Supreme Court.

II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not

include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Involuntary Plea (habeas issue one)

Petitioner asserts that his guilty plea is invalid because it was involuntary. A valid guilty plea is one that "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A defendant may show his guilty plea was not a voluntary and intelligent act because his attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. *Tollett v. Henderson*, 411 U.S. 258, 267 (1974); *Ray v. Rose*, 491 F.2d 285, 289-90 (6th Cir. 1974). In determining whether a plea is coerced, courts should consider the representations made during the plea hearing.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner claims that his plea was involuntary because his attorney told him that, if he did not plead guilty, his fiancée would be sent to prison and she would lose custody of her child. According to Petitioner, his fiancée was arrested and charged with witness tampering and conspiracy to commit witness tampering, based on a letter that Petitioner wrote to her while he was awaiting trial. The prosecutor offered to drop a charge of attempted robbery against Petitioner in exchange for a guilty plea on the other charges. Petitioner's attorney informed Petitioner of the aforementioned consequences to his fiancée if he elected not to plead guilty.

Petitioner accepted the offer and pled guilty. Shortly after the plea hearing, Petitioner's fiancée was released from custody, the charges against her were "reduced," and she was sentenced to probation. (Pet., ECF No. 2, PageID.17.)

The court of appeals addressed Petitioner's claim as follows:

Defendant's only claim of error related to the plea-taking process is his claim that his plea was coerced. After reviewing the record, the trial court expressly followed the plea-taking requirements of MCR 6.302. Because the trial court followed the applicable court rules in accepting defendant's pleas, it was "barred from considering testimony or affidavits inconsistent with statements made during the plea hearing." *White*, 307 Mich. App at 430. Defendant's statements at the plea hearing unequivocally indicated that he was voluntarily and knowingly entering the guilty pleas. Conversely, in support of defendant's motion to withdraw his plea, he filed an affidavit in which he averred that defense counsel told him that his fiancée would go to prison if he did not plead guilty and that he wrote "TDC" next to his signature on the Advice of Rights forms for all three lower court files to indicate that he was under "threat, duress, and coercion." "TDC" was in fact written next to defendant's signatures on his advice of rights forms. However, the statements contained in the affidavit as well as the letters "TDC" were written after the valid pleas were entered and are inconsistent with defendant's sworn testimony; thus, the trial court did not abuse its discretion by denying defendant's motion to withdraw his guilty pleas on the basis of coercion.

Moreover, from the record it appears that defendant was harboring this error as an appellate parachute in the event that he did not like his sentence. *People v. Pollick*, 448 Mich. 376, 387 (1995) (citation and quotation omitted). And, it appears that defendant's request to withdraw his pleas was motivated by his sentences. Defendant admitted responsibility for his actions at the plea hearing and prior to the imposition of his sentence at the sentencing hearing, defendant accepted responsibility for his actions, apologized to the victims, and explained his motivation for the offenses. After the trial court announced defendant's sentences, defendant fell to the floor and required assistance. It was only after he heard his sentences that defendant challenged the voluntariness of his pleas. "[R]equests to withdraw pleas are generally regarded as frivolous where the circumstances indicate that the defendant's true motivation for moving to withdraw is a concern regarding sentencing." *People v. Haynes*, 221 Mich. App 551, 559 (1997). Therefore, the trial court did not abuse its discretion when it denied defendant's motion to withdraw his pleas. *Brown*, 492 Mich. at 688.

[D]efendant supports this claim with his own affidavit that contradicts his sworn testimony at the plea hearing. Defendant's "contradictory affidavit is insufficient to contradict [his] sworn testimony in open court." *White*, 307 Mich. App at 432. The record indicates that defendant knowingly and voluntarily pleaded guilty to the three crimes. Defendant stated numerous times on the record that he was not threatened into pleading guilty and that the plea agreement as stated on the record was the only promise that had been made to him. Therefore, defense counsel was not ineffective for failing to discuss alleged coercion with regard to defendant's guilty pleas.

*People v. White*, 2016 WL 3946744, at *1-2 (Mich. Ct. App. July 21, 2016) (parallel citations omitted).

Petitioner does not contest the Michigan Court of Appeals' discussion of the facts, other than its assertion that he wrote the letters "TDC" on the advice-of-rights form *after* entering a valid plea. He contends that he wrote these letters on the form before the plea hearing concluded. It does not matter when he wrote those letters, however, because the issue identified by Petitioner as motivating him to plead guilty has not been recognized by the Supreme Court as a basis for invalidating an otherwise proper guilty plea.

Generally speaking, it is not coercive to present a criminal defendant with a difficult choice between accepting a plea offer or facing the possibility of more significant consequences without the plea. In fact, this sort of choice is part and parcel of the plea process. As the Supreme Court has stated, "confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, [but] the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). Thus, for instance, it is not unusual for a prosecutor to agree to drop certain charges in exchange for a defendant's agreement to plead guilty. Such an offer might discourage the defendant from exercising his right to trial, but it is not unduly coercive.

As to the specific consequences alleged by Petitioner regarding his fiancée, "[t]he Supreme Court has expressly reserved judgment on the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person other than the accused." *United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983) (citing

7

*Bordenkircher*, 434 U.S. at 364 n.8); *accord Cornett v. Lindamood*, 203 F. App'x 691, 694 (6th Cir. 2006). Moreover, courts in this circuit and others have held that a plea conditioned on a promise not to prosecute another party is not coercive or invalid. *See Usher*, 703 F.2d 956 at 959 (plea not invalid where the ability of the defendant's wife to plead guilty was conditioned on the defendant's plea); *United States v. McElhaney*, 469 F.3d 382, 386 (5th Cir. 2006) ("Where the prosecution has a good-faith basis to threaten charges against a third-party, a defendant's election to 'sacrifice himself for such motives' is not a basis to challenge the voluntariness of the plea."); *United States v. Shapiro*, 29 F. App'x 33, 35 (2d Cir. 2002) ("Pleas in exchange for a promise by the government not to prosecute a third party are valid."); *United States v. Bennett*, 252 F.3d 559, 563 (2d Cir. 2001) ("[T]he voluntariness of a guilty plea is not undermined just because the plea is induced by a defendant's desire to benefit others."); *United States v. Keeter*, 130 F.3d 297, 300 (7th Cir. 1997) ("Prosecutors may offer strong inducements, such as reduced charges or immunity for family members, to elicit confessions or guilty pleas.")); *Sanchez v. United States*, 50 F.3d 1448, 1455 (9th Cir. 1995) (government's promise not to prosecute the defendant's wife did not render the defendant's guilty plea invalid); *Mosier v. Murphy*, 790 F.2d 62, 66 (10th Cir. 1986) (agreement not to prosecute the defendant's wife and mother-in-law). By the same logic, it was not improper for the prosecutor in Petitioner's case to offer more lenient treatment toward Petitioner's fiancée if he agreed to plead guilty, or for his attorney to suggest that she might suffer greater consequences if he did not plead guilty.

Petitioner cites *Lynumn v. Illinois*, 372 U.S. 528 (1963), as an example of coercion similar to the situation that he faced. In *Lynumn*, the Supreme Court determined that an oral confession was coerced when the defendant was told that her children would be taken from her if she did not cooperate, "while she was encircled in her apartment by three police officers and a

twice convicted felon who had purportedly 'set her up.'" *Id.* at 534. She had no prior experience with the criminal law, and there was "no friend or adviser to whom she might turn." *Id.*

*Lynumn* does not apply. It did not involve a guilty plea, or a situation in which the defendant was represented by counsel. In addition, unlike the defendant in *Lynumn*, Petitioner was accompanied by counsel at the plea hearing, and could have requested an opportunity to discuss all the relevant consequences of the decision with him, or rejected the plea offer and gone to trial if he was not satisfied choice before him. Thus, *Lynumn* is inapposite.

Petitioner also cites *Bordernkircher*, but the Supreme Court made clear in that case that it did "not involve the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused[.]" *Bordenkircher*, 434 U.S. at 364 n.8. In other words, that case did not involve the circumstances at issue here, in which the defendant pled guilty in order to avoid adverse consequences for a third party.

In short, there is no clearly-established law holding that it is improper or coercive for a prosecutor to threaten adverse consequences for a third party if the defendant declines to accept a plea offer. Consquently, Petitioner cannot demonstrate that the state court's decision was contrary to, or an unreasonable application of, clearly established law.

Furthermore, according to the court of appeals, Petitioner's assertion that his plea was involuntary is undermined by his statements under oath at his plea hearing. According to that court, Petitioner repeatedly affirmed that his plea was voluntary, that he was not threatened into pleading guilty, and that he was not given any promises other than what was in the plea agreement. These statements are inconsistent with Petitioner's claim that he was coerced to plead guilty by a threat toward his fiancée. Petitioner does not challenge the state court's description of the record,

9

and the Court presumes that it is correct. It was not improper for the state court to credit Petitioner's statements under oath at the plea hearing over an affidavit that Petitioner signed after the hearing. Nor was it improper for the court to give little weight to Petitioner's use of the letters "TDC" on his advice-of-rights form. If Petitioner had genuine concerns about the voluntary nature of his plea, he could have raised them openly at the plea hearing rather than bury them in a cryptic notation next to his signature on a form.

For all the foregoing reasons, Petitioner's claim is without merit.

IV. Ineffective assistance of counsel (habeas issue two)

Next, Petitioner claims that his counsel provided ineffective assistance when telling Petitioner that his fiancée could go to prison and lose custody over her children if Petitioner did not plead guilty.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance

was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the Court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

In addition, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Petitioner does not indicate what was unreasonable about counsel's advice, other than the fact it was, in Petitioner's view, unduly coercive. He does not contend that counsel's representations were false. Indeed, Petitioner asserts that his fiancée was under arrest at the time of his plea, she was released from custody shortly after the plea hearing, the charges against her were reduced, and then she was sentenced to probation. All of this suggests that she faced the consequences that counsel raised, but that she avoided them because of Petitioner's plea. It was perfectly reasonable for counsel to advise Petitioner of the possible consequences to his fiancée of a decision to reject the plea offer, and the benefits she might receive if he accepted the offer. Thus, Petitioner has not demonstrated that counsel's conduct was unreasonable.

11

Moreover, Petitioner has not demonstrated prejudice. As noted by the court of appeals, Petitioner's assertion that his decision was involuntary or motivated by a threat is undermined by own his testimony at the plea hearing.

Accordingly, Petitioner has not demonstrated that the state court's decision was contrary to, or an unreasonable application of, clearly established law. Nor has he demonstrated that its decision was based on an unreasonable determination of the facts. Whether or not Petitioner wrote the letters "TDC" before or after he entered a valid guilty plea is irrelevant to the reasonableness of counsel's conduct. Thus, Petitioner's claim is meritless.

V. Ineffective Assistance of Counsel (habeas issue three)

Petitioner also contends that counsel failed to provide constitutionally effective assistance because he did not seek to suppress the letter that Petitioner had written to his fiancée. The court of appeals found that Petitioner waived this issue when he entered his guilty plea.

> When defendants plead guilty to their charges, they make the issue of factual guilt "irrelevant," and a voluntary and intelligent plea conclusively resolves the issue of the defendant's factual guilt in favor of the prosecution. *People v. New*, 427 Mich. 482, 494 (1986). When a defendant claims an error that "relates solely to the capacity of the state to prove defendant's factual guilt, it is subsumed by defendant's guilty plea," and thus, the claims are waived. *Id.* at 491. Similarly, claims that defense counsel was ineffective on grounds that are subsumed by a defendant's guilty plea are also waived. *People v. Vonins* (After Remand), 203 Mich. App 173, 176 (1993).
>
> In this case, when defendant admitted to bribing a witness during the plea proceeding, defendant resolved his factual guilt on the charge in favor of the prosecution. *New*, 427 Mich. at 494. Defendant's evidentiary claim relating to a letter that supported his witness bribing charge "relates solely to the capacity of the state to prove defendant's factual guilt," and, therefore, this issue was waived. *Id.* at 491. Because defendant's "alleged deficient action of defense counsel relate[s] to" an issue waived by his unconditional guilty plea, defendant's claim of ineffective assistance of counsel is also waived. *Vonins (After Remand)*, 203 Mich. App at 175.

*White*, 2016 WL 3946744, at *2-3 (parallel citations omitted).

The court of appeals reasonably applied the correct law to the facts of Petitioner's case. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by the plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the validity of the plea. *See United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001) (concluding that pre-plea ineffective-assistance-of-counsel-claims were waived by the defendant's guilty plea); *accord Rice v. Olson*, No. 16–1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) ("Claims of pre-plea ineffective assistance not relating to the acceptance of the plea are waived under the . . . *Tollett* rule."). Thus, the court of appeals reasonably determined that Petitioner's guilty plea foreclosed any claim that his attorney was ineffective in failing to move to suppress evidence.

Petitioner also mentions other instances in which he believes counsel failed to provide effective assistance before the plea, including: counsel's failure to thoroughly investigate Petitioner's case; counsel's failure to obtain certain documents that Petitioner requested; counsel's advice to waive the preliminary examination hearing; and counsel's failure to discuss a defense strategy or the details of the case with Petitioner. The same reasoning applies to these claims. Petitioner waived any challenge to this conduct when he entered a guilty plea.

13

## VI. Ineffective Assistance of Counsel (habeas issue four)

Finally, Petitioner contends that counsel was ineffective for failing to challenge the application of the habitual-offender statute, Mich. Comp. Laws § 769.12, to his sentence. Petitioner contends that his status as a fourth felony habitual offender is based on three felonies that he committed prior to a change in the interpretation of the habitual-offender statute by the Michigan Supreme Court in *People v. Gardner*, 753 N.W.2d 78 (Mich. 2008). Before *Gardner*, "multiple felony convictions that arose from a single criminal transaction were only considered as a single felony under [Mich. Comp. Laws § 769.12]." *People v. Brown*, No. 292548, 2010 WL 5129882, at *7 (Mich. Ct. App. Dec. 16, 2010). After *Gardner*, multiple felony convictions could be counted under the habitual-offender statute, even if they arose from the same criminal incident. *Id.* Petitioner apparently contends that some of the felonies that he committed before *Gardner* was decided should be treated as a single conviction under the interpretation of the habitual-offender statute applied by the courts before *Gardner*, because those convictions arose from the same incident. He contends that treating them as separate convictions, like the state court did in his case, is a violation of the Ex Post Facto Clause.

The court of appeals declined to address this issue because Petitioner did not properly raise it in his brief on appeal or his standard 4 brief. The prosecutor addressed the issue on appeal, and Petitioner rebutted the issue in his reply brief, but raising it in a reply brief was not sufficient to present the issue before the court. *See White*, 2016 WL 3946744, at *3 n.2. Consequently, this claim is arguably procedurally defaulted. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).

14

Nevertheless, the Court is not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.

Petitioner's claim is plainly meritless. The Constitution prohibits Congress and the states from passing ex post facto laws. *See* U.S. Const. art. I, § 9, cl.3 and art. I, § 10, cl.1. "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925). None of the foregoing circumstances were present in Petitioner's case.

*Gardner* was the law when Petitioner committed the crimes for which he was sentenced in 2014. The habitual-offender statute did not punish Petitioner for any crimes committed before *Gardner*; it enhanced his sentence for the crimes he committed in 2014. Thus, the application of *Gardner* to his case did not increase the punishment for any crimes after he

committed them. Nor did it punish him for conduct that was innocent when committed, or deprive him of a defense available to him when he committed his crimes. Accordingly, the Ex Post Facto Clause was not implicated by Petitioner's sentence.

The Michigan appellate courts have repeatedly reached the same conclusion. *See People v. Richardson*, No. 322195, 2016 WL 3030860, at *19 (Mich. Ct. App. May 26, 2016); *People v. Crump*, No. 298206, 2013 WL 3481354, at *8 (Mich. Ct. App. July 11, 2013); *see also Ex parte Brazel*, 292 N.W. 664 (Mich. 1940) (holding that counting prior convictions committed before the habitual-offender law was in effect does not make the law an "ex post facto law"). Petitioner's counsel could not have been ineffective for failing to raise a meritless objection.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily

dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   April 27, 2018              /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge